1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

CELESTE N. CLARK,                           CASE NO. 1:09-cv-01249-SMS

10                              Plaintiff,

                                            ORDER AFFIRMING AGENCY'S
11        v.                                DENIAL OF BENEFITS

12   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

13
                              Defendant.
14   _____/

15

16        Plaintiff Celeste N. Clark, proceeding *in forma pauperis*, by her attorneys, Law Offices of

17   Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for disability insurance benefits under Title II

     of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act") and supplemental security income
19
     ("SSI"), pursuant to Title XVI of the Act.  The matter is currently before the Court on the parties'
20
     cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder,
21
     United States Magistrate Judge.[1]  After fully reviewing the record and briefs in this matter, the
22
     Court affirms the agency's decision.
23
## I.   Administrative Record
24
### A.   Procedural History
25
        On December 2, 2004, Plaintiff filed protectively for disability insurance benefits, alleging
26
     disability beginning July 1, 2002.  AR 16.  On March 29, 2005, Plaintiff filed for SSI benefits,
27

28
     _____
        [1]  Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 9 and 10).

1   also beginning July 1, 2002.  AR 16.  Her claims were initially denied on June 2, 2005, and upon

2   reconsideration on December 23, 2005.  AR 16.  On February 24, 2006, Plaintiff filed a timely

3   request for a hearing.  AR 16.   Plaintiff appeared and testified at a hearing on June 7, 2007.  AR

4   24-55.  On August 23, 2007, Administrative Law Judge Michael J. Haubner ("ALJ") denied

5   Plaintiff's application.  AR 16-23.  The Appeals Council denied review on March 22, 2009.  AR

6   6-8.  On July 17, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

7          **B.      Factual Background**

8          Plaintiff (born June 9, 1978) alleged disability arising from insulin-dependent diabetes

9   mellitus, a history of heart palpitations secondary to supraventricular tachicardia (SVT), anxiety,

10  and depression.  She is a high school graduate and attended, but did not complete, college courses

11  in medical administration.  She last worked on March 20, 2001, when her employer changed her

12  working hours to a schedule that conflicted with her medication.  Her past work included office

13  assistant for a county agency and a hotel desk clerk.

14         Plaintiff lived with her two minor children, who were nine and twelve years old at the time

15  of the hearing.  She had a driver's license and drove her own car.  She was capable of her own

16  personal care.  She cooked, shopped, and did light housework.  She played with her children and

17  helped them with their homework.

18         According to her medical records, Plaintiff was diagnosed with diabetes in 1998 after the

19  birth of her second child.  During a 2002 pregnancy, Plaintiff experienced serious complications,

20  requiring nearly two months' hospitalization due to her inability to control her diabetes.  The baby

21  died shortly after its birth in September 2002.  She received no mental health treatment other than

22  sessions with a nurse from Hines Hospice after the baby's death.

23         Although Plaintiff testified that she was compliant with her medications and other

24  treatments and eighty percent compliant with diet, her diabetes was not under control.  Blood

25  sugars generally ranged from 200 to 300 mg/dl but reached as high as 680 mg/dl.  (Normal

26  glucose is between 70-99 mg/dl.)  Multiple medical notes comment that Plaintiff did not test her

27  blood sugar frequently and did not follow her diet plan.  On one occasion, a nurse noted that

28  ///

Plaintiff had eaten cookies and milk for breakfast.  She missed many appointments at the Community Diabetes Care Center.

Although Plaintiff stated on multiple occasions that she had suffered a heart attack, the record did not document her claim.  Plaintiff had multiple invasive procedures to diagnose her tachycardia.  She has no significant coronary artery disease.

Plaintiff's obstetrician, Douglas A. Helm, M.D., noted that she had no evidence of high blood pressure during her 2002 pregnancy, nor evidence of physical or mental limitations.  Helm reported that Plaintiff was able to do physical activity such as "sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling," and demonstrated "decent understanding and memory, sustained concentration, and persistence."

In a psychiatric evaluation for the agency dated June 12, 2004, Plaintiff told psychiatrist Ekram Michiel, M.D., that she had felt depressed and anxious since she was jailed for domestic violence in February 2004.  Michiel diagnosed:

| | |
|---|---|
| Axis I | Anxiety disorder, NOS.<br>Depressive disorder, NOS. |
| Axis II | Deferred |
| Axis III | history of insulin-dependent diabetes and high blood pressure |
| Axis IV | Stressors: Health condition |
| Axis V | Global Assessment of Functioning: 60-65 |

AR 276.[2]

///

///

---

[2]  The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR").  It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." Id. at 34.  The first description in the range indicates symptom severity; the second, level of functioning. Id. at 32.  In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. Id. at 33.
     GAF 60-65 covers the bottom of the range GAF 61-70, which indicates "[s]ome mood symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. at 34.

1    Michiel further opined:

2    Based on the evaluation and observation throughout the interview, I believe that
     the patient is able to maintain attention and concentration and to carry out one or
3    two step simple job instructions.

4    The patient is able to relate and interact with coworkers, supervisors and the
     general public.
5
     The patient is unable to carry out an extensive variety of technical and/or complex
6    instructions.

7    Considering that she is not on any psychotropic medication and having no mental
     health follow-up, I believe her prognosis would be better if she started getting
8    psychiatric treatment.

9    AR 276.

10   The agency's residual functional capacity assessment concluded that Plaintiff had no

11   significant limitations except for moderate limitation of her ability to carry out detailed

12   instructions.  The agency's psychiatric review technique indicated mild restriction of activities of

13   daily living, mild difficulties in maintaining functioning, and mild difficulties in maintaining

14   concentration, persistence, or pace.

15   Plaintiff testified that she could lift up to ten pounds.  She could sit for an hour and a half

16   at a time and could stand for an hour.  She had difficulty concentrating and was only able to focus

17   for thirty minutes before needing about twenty minutes' rest.  Because her feet swelled, she

18   needed to elevate them about two and a half hours in an eight-hour period.

19   **Vocational Expert's Testimony.**  Vocational expert Jose Chaparro also testified.

20   Plaintiff's prior relevant positions were hotel clerk, which is light, semiskilled work, and office

21   helper, which is light unskilled work.  Relevant and transferable skills from these positions

22   included record keeping, customer service, handling financial transactions, and using computer

23   equipment and telephones.

24   For all hypothetical questions, the ALJ directed Chaparro to assume a hypothetical person

25   who had the same age, education, language, and experience background as Plaintiff.  Additionally,

26   in the first hypothetical question, based on Exhibit 3F, the ALJ directed Chaparro to assume a

27   person able to maintain attention and concentration and to carry out one- or two-step, simple job

28   instructions, but not complex or technical instructions.  Chaparro opined that such a person could

4

1   perform the position of office helper but not the position of desk clerk.  The hypothetical person

2   could also perform ""the world of unskilled work at all exertion levels."  The grids would apply.

3          For hypothetical two, based on Exhibit 4F, the ALJ directed Chaparro to assume that the

4   person was moderately limited in the ability to understand, remember, and carry our detailed

5   instructions.  Again, Chaparro opined that such a person could perform the position of office

6   helper but not the position of desk clerk, as well as "the world of unskilled work at all exertion

7   levels."  The grids would apply.

8          Hypothetical three was based on Exhibit 10F.  The ALJ directed Chaparro to assume a

9   person would could lift and carry twenty pounds occasionally and ten pounds frequently; could

10  stand and walk six hours out of eight; could sit about six hours out of eight; and had unlimited

11  ability to push and pull.  Chaparro opined that such a person could work as either an office helper

12  or a hotel desk clerk, as well as any unskilled work that was sedentary or light.

13         Hypothetical 3A combined the assumptions of hypotheticals one and three.  Chaparro

14  opined that such a person could perform the office assistant job as well as any unskilled work that

15  was sedentary or light.

16         Hypothetical 3B combined the assumptions of hypotheticals two and three.  Chaparro

17  opined that such a person could perform the office assistant job as well as any unskilled work that

18  was sedentary or light.

19         In hypothetical four, based on Plaintiff's testimony at the hearing, the ALJ directed

20  Chaparro to assume a person who could lift and carry ten pounds; could concentrate in thirty-

21  minute segments followed by a twenty-minute rest; could sit for one and a half hours at a time;

22  and needed to elevate his or her feet for two-and-one-half hours in an eight hour period.  Chaparro

23  replied that such a person could not perform Plaintiff's prior jobs or any other work.

24         For hypothetical five, based on Exhibit 20F, the ALJ directed Chaparro to assume a person

25  with no capacity to lift, push or pull; no capacity for continuous sitting; no capacity for reaching,

26  standing, continuous standing, overhead work, or squatting.  Chaparro opined that such a person

27  could not perform Plaintiff's prior jobs or any other work.

28  ///

Finally, Plaintiff's attorney directed that Chaparro assume all of the limitations of hypothetical four plus an additional requirement that the person lie down for two hours during an weight-hour period.  Chaparro replied that such a person could not perform Plaintiff's prior jobs or any other work.

## II.  **Discussion**

### A.  **Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  Is do, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

///

1    The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1,

2    2002, the alleged onset date.  He found that Plaintiff had four severe impairments: insulin

3    dependent diabetes mellitus, heart palpitations secondary to SVT, an anxiety disorder not

4    otherwise specified, and a depressive disorder not otherwise specified.  None of these severe

5    impairments met or medically equaled an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.

6    1.  Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and

7    ten pounds frequently; to sit, stand, or walk six hours of an eight-hour workday; perform simple

8    repetitive tasks and carry our simple one- and two-step instructions.

9    **B.    Scope of Review**

10    Congress has provided a limited scope of judicial review of the Commissioner's decision

11    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

12    a court must determine whether substantial evidence supports the Commissioner's decision.  42

13    U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,

14    402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

15    1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept

16    as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must

17    be considered, weighing both the evidence that supports and the evidence that detracts from the

18    Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

19    evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g.,*

20    *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's

21    determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if

22    the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and*

23    *Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

24    **C.    Plaintiff's Claim**

25    At steps four and five of the analysis, the ALJ has the burden of proving that work that the

26    claimant can perform despite his or her limitations exists in significant numbers in the national

27    economy.  20 C.F.R. § 404.1560(b)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

28    An ALJ can meet this burden either through the testimony of a vocational expert or by reference

7

1   to the Medical-Vocational Guidelines at 20 C.F.R., pr. 202, supt. P, app. 2 (the "grids").  Because

2   of Plaintiff's non-exertional limitations in this case, the ALJ appropriately used a vocational

3   expert's testimony.  *See Tackett*, 180 F.3d at 1102;  *Desrosiers v. Secretary of Health and Human*

4   *Services*, 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, C.J., *concurring).*

5        The vocational expert must testify to the types of jobs that the claimant can do, given his

6   or her residual functional capacity, and the availability of such jobs in the economy.  *Tackett*, 180

7   F.3d at 1101.  At the hearing, the ALJ must pose hypothetical questions that "'set out all of the

8   claimant's impairments'" for the vocational expert's opinion.  *Id.*, *quoting Gamer v. Secretary of*

9   *Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987).  "The ALJ's depiction of the

10  claimant's disability must be accurate, detailed, and supported by the medical record."  *Tackett*,

11  180 F.3d at 1101.

12       Emphasizing that residual functional capacity is not the least an individual can do, but the

13  most, Plaintiff contends that the ALJ erred by directing the vocational expert that one-and two-

14  step simple instructions were not the most that Plaintiff could perform.  The specific interchange,

15  which took place in the context of the ALJ's first hypothetical question, is set forth at AR 49-50:

16  Q   Further assume then if there's work our first person could do, it would be
        subject to the following conditions and limitations, and this is based on
17      Exhibit 3F, [page] three.  This person is able to maintain attention and
        concentration and to carry out one or two-step, simple job instructions.
18      This patient – person is able to relate and interact with coworkers,
        supervisors, and the general public.  However, this person is unable to carry
19      out an extensive variety of technical and/or complex instructions.  Could
        this person do past relevant work Claimant did?

20
    A   No.
21
    Q   Could this person do other work as it generally appears?
22
    A   Yes.
23
    Q   Could you give me job text and frequencies?
24
    A   You know, as I answered that, I just have one quick question.
25
    Q   Sure.
26
    A   It says she is able to do one to two steps?
27
    Q   Yeah.
28

1   A       Does that mean she's restricted to one to two steps?

2   Q       It does not expressly say that.

3   A       Doesn't say that?

4   Q       But what it does expressly restrict from are complex and technical.  So I --

5   A       Complex and technical.

6   Q       I'm loathe to read in any more restrictions than what are expressly stated.

7   A       All right.  Well, in that case, I need to change my answer.

8   Q       Okay.

9   A       Or rather office helper, I'm sorry.

10  Q       Right, but not the hotel clerk?

11  A       But not the hotel clerk.

12  AR 49-50.

13  Exhibit 3F is Dr. Michiel's psychiatric evaluation.  AR 274-276.  As the ALJ stated, at

14  page three (AR 276), Dr. Michiel opined:

> Based upon the evaluation and observation throughout the interview, I believe that
> the patient is able to maintain attention and concentration and to carry out one or
> two step simple job instructions.
>
> The patient is unable to carry out an extensive variety of technical and/or complex
> instructions.

The ALJ's hypothetical question, which relied directly on Dr. Michiel's opinion was accurate, detailed, and supported by the medical record.  The ALJ neither omitted nor re-phrased the opinion, allowing the vocational expert to formulate his opinion of Plaintiff's occupational prospects directly on Michiel's assessment of Plaintiff's abilities and limitations.

Plaintiff relies on *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988), for the general proposition, just as in *Tackett*, that the hypothetical questions to the vocational expert must accurately set forth all of the claimant's limitations.  She does not develop her contention beyond alleging the ALJ's violation of the basic requirements that a hypothetical question be accurate, detailed, and supported by the record.

*///*

1   Although Plaintiff identifies the applicable law, the outcome of this case must differ from

2   that in *Embrey*.  In *Embrey,* the ALJ included limitations contradicted by the record (the ALJ

3   stated that the claimant could alternate between sitting and standing for a full eight-hour work day

4   in the absence of any evidence supporting that assertion) and omitted substantial medically

5   supported limitations including the claimant's need to rest periodically, severe back and chest

6   pain, and blurred vision.  *Id.*  Here, the ALJ did not omit or misstate the limitations but presented

7   to the vocational expert the precise language of the physician's opinion, refusing to superimpose

8   on it any personal interpretation of Dr. Michiel's intended meaning.  Accordingly, *Embrey* does

9   not mandate reversal or remand here.  *Also compare this case to Osenbrock v. Apfel*, 240 F.3d

10  1157, 1164 (9th Cir. 2001) (holding that the ALJ did not err in omitting limitations relating to side

11  effects of the claimant's medication in the absence of evidence establishing that the side effects

12  were severe enough to interfere with the claimant's ability to work); *Matthews v. Shalala*, 10 F.3d

13  678, 680 (9th Cir. 1993) (holding that the ALJ's error in omitting some of the claimant's

14  limitations was irrelevant in light of other reliable evidence, including the claimant's own

15  testimony and medical evidence undermining the claimant's credibility).

16  Plaintiff relies on *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), and *Kornock v.

17  Harris*, 648 F.2d 525, 527 (9th Cir. 1980), for the proposition that the assumptions set forth in a

18  hypothetical question must be supported by the record.  In *Gallant*, the ALJ specifically excluded

19  pain as a limitation despite medical evidence supporting the plaintiff's claims of persistent

20  disabling pain.  753 F.2d at 1456.  In *Kornock*, the hypothetical questions did not contemplate

21  Kornock's limitations as set forth by the doctors: "no work, or at best limited work involving no

22  physical strain and no environmental pollutants"; no pushing or pulling with his arms; limited

23  capacity to sit or stand more than on to three hours.  648 F.2d at 527.  In this case, Plaintiff does

24  not articulate any comparable omissions that would invalidate the hypothetical question.

25  As previously noted, Plaintiff alleges that the ALJ's presentation of Dr. Michiel's opinion

26  offends the proposition, as set forth in Social Security Ruling 96-8p, that residual functional

27  capacity is the most that a claimant can do, not the least.  Plaintiff protests that the ALJ's

28  statement was "the same thing as saying that she cannot perform more than one and two step

instructions." If Plaintiff's contention is correct, any error was unquestionably harmless.  If the ALJ concluded that Plaintiff was not disabled, based on the vocational expert's opinion that work that the claimant can perform despite her limitations exists in significant numbers in the national economy, then Plaintiff would not be disabled if her residual functional capacity were higher than the vocational expert believed based on the hypothetical question.

## III.    Conclusion and Order

Based on the foregoing, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:    December 8, 2010            /s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE